ACCEPTED
13-14-00581-CV
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
1/5/2015 8:52:04 PM
DORIAN RAMIREZ
CLERK

## NO. 13-14-00581-CV

### IN THE COURT OF APPEALS FOR THE

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
1/5/2015 8:52:04 PM
DORIAN E. RAMIREZ
Clerk

### THIRTEENTH JUDICIAL DISTRICT OF TEXAS
### AT CORPUS CHRISTI - EDINBURG, TEXAS

---

### GUADALUPE RIVERA
### APPELLANT

### VS.
### LETICIA LOPEZ
### APPELLEE

---

### NO. C-6914-13-G

### ON APPEAL FROM THE 370TH DISTRICT COURT, HIDALGO COUNTY, TEXAS,
### THE HONORABLE MENTON MURRAY, JR., JUDGE PRESIDING

---

### CROSS-APPELLEE'S RESPONSE TO CROSS-APPELLANT'S BRIEF

---

Gilberto  Hinojosa
LAW OFFICE OF GILBERTO
HINOJOSA  & ASSOCIATES, P.C.
622 E. St. Charles St.
Brownsville, Texas  78520
Tel. (956)544-4218
Fax (956) 544-1335
*Attorney for Appellan*t

## <u>CERTIFICATE OF PARTIES AND COUNSEL</u>

The names of the parties and their respective attorneys in these proceedings are as follows:

| | |
|---|---|
| Appellant: | Lupe Rivera |
| Attorneys for Appellant : | Gilberto  Hinojosa<br>LAW OFFICE OF GILBERTO HINOJOSA  & ASSOCIATES, P.C.<br>622 E. St. Charles St.<br>Brownsville, Texas  78520<br>Tel. (956)544-4218<br>Fax (956) 544-1335<br>***Attorney for Appellan**t* |
| Appellee: | Leticia Lopez |
| Attorneys for Appellee: | Jerad Wayne Najvar<br>NAJVAR LAW FIRM<br>4151 Southwest Freeway, Suite 625<br>Houston, TX 77027<br>Tel. (281) 404-4696<br>Cell: (281) 684-1227 |

# TABLE OF CONTENTS

**Certificate of Parties and Counsel** ...............................................................................ii

**Table of Contents** ...................................................................................................iii

**Index of Authorities** ...............................................................................................iv

**Statutes**....................................................................................................................iv

**I.   Statement of Facts** ...........................................................................................1

**II.   Summary of the Argument**...............................................................................2

**III.  Arguments and Authorities** ............................................................................5

**A.   Cross Appellee's Response To Cross - Appellant's Issue No. 1a and 3.....5**

**B.   Cross - Appellee's Response to Cross - Appellant's Issue No. 1b............28**

**C.   Cross - Appellee's Response to Cross - Appellant's Issue No.2 .............31**

**D.   Cross - Appellee's Reply to Cross - Appellant's Issue No 4....................33**

**IV.   Conclusion**............................................................................................35

# INDEX OF AUTHORITIES

## CASES

*Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983)**..............................29**

*Fields v. E. E. Cotton*, 383 S.W.2d 84 (Civ.App.-Houston - 1964, no writ)**..........6,7**

*Flores v. Fourth Court of Appeals,*777 SW 2d. 38, 41-41, (Texas 1989)**.........26,31**

*Gonzalez v. Villarreal***, 251 S.W.3d 763, 775-76 (Tex.App.-Corpus Christi 2008, pet. dism'd)................................................................10,13,17,27,29,31**

*In Re Peacock*, 2014 WL 316708 (Tex.App.-Tyler 2014)**...................................6,22**

*Johnson v. Ventling,* 2013 WL 6730043 (Tex. App. Corpus Christi 2013)**.......26,31**

*Miller v. Hill,* 698 S.W.2d 372, 375 (Tex.App.-Houston [14th Dist.] 1985**...............................................................................................13,18,24**

*Mills v. Bartlett*, 377 S.W.3d 636, 637 (Tex. 1964)**.....................................,6,7,11,20**

*Royalty v. Nicholson,* 411 S.W.2d 565 (Tex.Civ.App.-Houston 1967, writ ref'd. n.r.e.)**.............................................7,10,11,12,13,15,16,17,21,24,27,29**

*Simmons v. Jones*, 838 S.W.2d 298, 301 (Tex.App.-El Paso)**...............................6,7**

*Solis v. Martinez*, 264 S.W.2d 956 (Tex.Civ.App.-San Antonio 1954, pet. ref'd)**............................................7,10,11,12,13,15,16,17,21,24,27,29, 31**

## STATUTES

**Texas Elections Code Section 1.015................................................................10,11**

**Texas Elections Code Section 11.005..............................................................14,20**

## OPINIONS

**Texas Attorney General Opinion, No GA-1041, February 4, 2004...................15**

**IN THE COURT OF APPEALS FOR THE**

**THIRTEENTH JUDICIAL DISTRICT OF TEXAS
AT CORPUS CHRISTI - EDINBURG, TEXAS**

**GUADALUPE RIVERA
APPELLANT**

**VS.
LETICIA LOPEZ
APPELLEE**

**NO. C-6914-13-G**

**ON APPEAL FROM THE 370TH DISTRICT COURT, HIDALGO
COUNTY, TEXAS, THE HONORABLE MENTON MURRAY, JR., JUDGE
PRESIDING**

**CROSS-APPELLEE'S RESPONSE TO CROSS-APPELLANT'S BRIEF**

**TO THE HONORABLE THIRTEENTH COURT OF APPEALS:**

**NOW COME,** GUADALUPE RIVERA, Cross-Appellee in the above

styled and numbered cause, and presents this his Response to Cross-Appellant's

Brief:

**I.**

**STATEMENT OF FACTS**

Cross-Appellee's Statement of Facts is set out in Appellant's Brief. On

1

numerous occasions throughout it's brief, Cross-Appellant misrepresents to this Court the findings of fact made by the trial court on the court's rulings challenged by Cross-Appellant in the cross-appeal. The trial court made specific Findings of Fact and Conclusions of Law in support of its rulings in this case. ***Court's Findings of Fact and Conclusions of Law, Supp CR 24-32.*** Cross-Appellant filed additional proposed findings of fact and conclusions of law which the trial court declined to enter. ***Contestant's Request for Additional and Amended Findings of Fact and Conclusions of Law, Supp CR 33-38; and Trial Judge Email, Supp CR 39.*** Therefore, only those specific findings of fact and conclusions of law entered by the trial court is what must guide this Court in determining no evidence and sufficiency of the evidence points of error made by Cross-Appellant. Cross-Appellee will address each of those misrepresentations of the trial court's finds made by Cross-Appellant at each response to each Issue brought Cross-Appellant.

## II.

## SUMMARY OF THE ARGUMENT

The trial court did not commit error in overruling Cross-Appellant's residency challenge to Illiana Guerrero, and Guadalupe Rivera, Jr.in that Cross-Appellant failed to prove by clear and convincing evidence that said voters did not reside in District 5 of the Weslaco City Commission. There was more than sufficient evidence offered at trial to show that both Illiana Guerrero, and her husband, Guadalupe Rivera, Jr., had a present intention to reside at Mr. Rivera's

childhood home and the trial court was within its discretion in finding that Cross-Appellant failed to meet her burden to show the negative of these voters' intentions.

With respect to voter, Esteban Martinez, the trial court did not commit error in failing to find by clear and convincing evidence that Martinez voted for Rivera in the District 5 race in that the trial court was within its discretion to chose to not believe that part of the testimony of Mr. Martinez. Given that Martinez was called twice to testify in this case by Cross-Appellant and that much of his testimony was incredible, the trial court's findings were not error as a matter of law.

The trial court did not commit error in deducting the votes of Tomasa Cavazos, Jose Luis Martinez, Sr., and Jose Luis Martinez, Jr. from Leticia Lopez's final vote count, because there is clear and convincing evidence to support the finding that they did not reside in District 5 of the Weslaco City Commission and voted for Leticia Lopez. The Martinez' were subpoenaed and called by Cross-Appellant and the reasons given by the Martinez' for voting for Cross-Appellant were legitimate and reasonable under the circumstances, i.e. that Cross-Appellant had come to the family's assistance at the time of the death of their close relative. The same with Mrs. Cavazos. She likewise testified that Cross-Appellant had helped her during her time of need, i.e. the tragic death of her daughter.

3

The trial court did not commit error in overruling Cross-Appellant's residency challenge to Delma Cadena, Alexia Dinah Chavez, Alyssa Domitria Chavez, Delma Ann Chavez, Diana Pena, Valerie Jadine Pena, Illiana Yvonne Rivera, Raul Rivera, Sr., and Raul Rivera, Jr. in that Cross-Appellant failed to prove by clear and convincing evidence that said voters did not reside in District 5 of the Weslaco City Commission. None of these voters were subpoenaed or called to testify at trial by Cross-Appellant. Only Delma Cadena testified and she was called by Cross-Appellee. The testimony of Ms. Cadena, as well as Hortencia Cuellar, was that the place of registration was their family home and their residence and it had been for many years. Cross-Appellant's evidence to the contrary was minimal and not enough to meet their clear and convincing burden of proof required to overcome the presumption that the residence of the voters was at the location where they were registered.

Finally, the trial court did not commit error in deducting four undervotes, rather than one from the total number of illegal but undetermined votes cast in the election because Cross-Appellant failed to prove by clear and convincing evidence that said undetermined voters were not among the undercounted undetermined voters. The trial court was asked to make a finding that only one or two votes should be deducted from the total number of undetermined votes based upon the alleged undercount and it declined to do so. Given the scant evidence that the

4

Cross-Appellant offered on this issue, the trial court was well within its discretion to find that it would only deduct four votes from the undetermined votes as a result of the undercount.

# III.

# ARGUMENTS AND AUTHORITIES

## A. CROSS-APPELLEE'S RESPONSE TO CROSS-APPELLANT'S ISSUE NO. 1a and 3.

***The trial court did not commit error in overruling Cross-Appellant's residency challenge to Illiana Guerrero, and Guadalupe Rivera, Jr. in that Cross-Appellant failed to prove by clear and convincing evidence that said voters did not reside in District 5 of the Weslaco City Commission.***

***The trial court did not commit error in overruling Cross-Appellant's residency challenge to Delma Cadena, Alexia Dinah Chavez, Alyssa Domitria Chavez, Delma Ann Chavez, Diana Pena, Valerie Jadine Pena, Illiana Yvonne Rivera, Raul Rivera, Sr., and Raul Rivera, Jr. in that Cross-Appellant failed to prove by clear and convincing evidence that said voters did not reside in District 5 of the Weslaco City Commission.***

### 1. Residence under Texas Elections Law

Section 1.015, of the Texas Elections Code defines Residence as follows:

"(a) In this code, "residence" means domicile, that is, one's home and fixed place of habitation to which one intends to return after any temporary absence.
(b) Residence shall be determined in accordance with the common-law rules, as enunciated by the courts of this state, except as otherwise provided by this code.
(c) A person does not lose the person's residence by leaving the person's home to go to another place for temporary purposes only.

(d) A person does not acquire a residence in a place to which the person has come for temporary purposes only and without the intention of making that place the person's home." **Tex.Elec.Code Section 1.015**

The Texas Supreme Court established the standard by which residence will be determined:

> "The term 'residence' is an elastic one and is extremely difficult to define. The meaning that must be given to it depends upon the circumstances surrounding the person involved and largely depends upon the present intention of the individual. Volition, intention and action are all elements to be considered in determining where a person resides and such elements are equally pertinent in denoting the permanent residence or domicile.
> * * *
> . . .Neither bodily presence alone nor intention will suffice to create the residence but when the two coincide at that moment the residence is fixed and determined. There is no specific length of time for the bodily presence to continue.

*Mills v. Bartlett*, 377 S.W.3d 636, 637 (Tex. 1964).

Courts have long held that even prolonged absences from the declared residence do not prevent a person from legally establishing that location for residency purposes, as long as there is an intention to eventually return to the declared residence. *Fields v. E. E. Cotton*, 383 S.W.2d 84 (Civ.App.-Houston - 1964, no writ); *Simmons v. Jones*, 838 S.W.2d 298, 301 (Tex.App.-El Paso). Evidence such as a current declared homestead exemption in another county is not enough to destroy residency in the county where a voter or candidate is declaring his/her residency. *In Re Peacock*, 2014 WL 316708 (Tex.App.-Tyler 2014).

6

Evidence such as where a person receives his mail is a factor in determining the residence of a voter. *Fields v. E. E. Cotton, supra*.

Finally, and most importantly in this case, the contestant has the burden of proving by clear and convincing evidence the negative of every theory on which the vote could have been legal. *Royalty v. Nicholson,* 411 S.W.2d 565 (Tex.Civ.App.-Houston 1967, writ ref'd. n.r.e.); *Solis v. Martinez*, 264 S.W.2d 956 (Tex.Civ.App.-San Antonio 1954, pet. ref'd). In this case, that required Cross-Appellant Lopez to offer *clear convincing proof* that the challenged voter *did not* have the present intention of residing at the place where he/she was registered to vote or *did not* have the intention of eventually returning to the residence where he/she was registered to vote after a temporary or prolonged absence. In other words, under the Texas law a voter can still have the "present intention" to have a certain address as his/her residence, *Mills v. Bartlett*, 377 S.W.3d 636, 637 (Tex. 1964), even if there is evidence that person has been living or sleeping in another location. *Fields v. E. E. Cotton*, 383 S.W.2d 84 (Civ.App.-Houston - 1964, no writ); *Simmons v. Jones,* 838 S.W.2d 298, 301 (Tex.App.-El Paso 1992). Under that circumstance, if a voter registered in a certain location temporarily resides in another location, his/her vote is legal. To overcome that presumption, *Simmons v. Jones*, 838 S.W.2d 298, 301 (Tex.App.-El Paso 1992), Cross-Appellant Lopez needed to offer clear and convincing proof of the negative of that theory that a person's vote was otherwise legal, i.e. in this case, that in fact the voter had no

7

intention of returning to his permanent residence after a temporary or prolonged absence.

**2.  Cross-Appellant Lopez failed to meet her burden to show by clear and convincing evidence that Illiana Annette Guerrero's vote should be invalidated because allegedly she was not a resident of District 5 at the time of the election in question.**

Illiana Annette Guerrero testified that she is married to Lupe Rivera, Jr. ***Deposition of Illiana Annette Guerrero, RR3 p 247, line 9-11.***  She stated that she lives with him in a rented house and that they are living in the house that they rent "just in the meantime." ***Id at p 248, line 11-17***.  She testified that when she registered to vote she mistakenly listed the 316 West Lost Toritos address, rather than her true residence and address, 716 North Padre.  ***Id at p 251, line 6-15***.  She testified that "[b]ecause we don't plan to live at 700 East 8th for a very long time, and [Lupe Rivera, Jr. is her] husband, and [she is] going to use the address that he uses.  We can't just have different addresses on legal documents." ***Id at line 16-21***.  She testified that the reason that she accidentally used the Torritos street address was because "there's times where my children are dropped off when we're here at this [Torritos] address, and their dad has to drop them off by a certain time, and we're hanging out there having dinner, so I'll text him this address [ Torritos]  to have them there, and I mean, that address just stuck, and it's the address I put on." ***Id at p253, line 17-24.***

Illiana Annette Guerrero testified that her "residence is the residence of [her] husband" and that residence is "716 North Padre Street, Weslaco,." *Id at p 277, line 13-18.* She further testified that "when [she] voted in this election, [she was] voting in the precinct that [she lived] in." *Id at line 19-21.* She testified that she had been married before and that when she was married before she considered her residence her then husband's residence. *Id at p 276, line 7-16.* She considered her home where her heart is and her heart was with her husband. *Id at p 279, line 9-11.*

> **Section 11.005 of the Texas Elections Code** provides:

> "If a voter who is erroneously registered in an election precinct in which the voter does not reside is permitted to vote by an election officer who does not know of the erroneous registration, the votes for the offices and measures on which the voter would have been eligible to vote in the voter's precinct of residence are valid unless the voter intentionally gave false information to procure the erroneous registration." **Tex.Elec.Code Section 11.005**

Illiana Annette Guerrero's testimony that she was married to Lupe Rivera, Jr. was not rebutted. Her testimony was that he was a resident of 716 North Padre Street, Weslaco, Texas - the same residence as his father, Lupe Rivera, Sr. That residence in the same Weslaco City Commission District 5 as the residence where she was mistakenly registered, i.e. 316 West Torritos. There was no evidence that she "intentionally gave false information to procure the erroneous registration." The only evidence offered at trial was that she mistakenly wrote the wrong address on her voter registration application. Therefore, under Section 11.005 of the Texas

9

Elections Code, Illiana Annette Guerrero's ballot for the November 2013 election for Weslaco City Commission, District 5 was valid. Appellant provided no evidence, much less clear and convincing evidence, to overcome the presumption that her ballot should be counted. *Royalty v. Nicholson*, 411 S.W.2d 565 (Tex.Civ.App.-Houston 1967, writ ref'd n.r.e.); *Solis v. Martinez*, 264 S.W.2d 956 (Tex.Civ.App.-San Antonio 1954, pet. ref'd).

Reviewing all the evidence "in the light most favorable to the finding" of the trial court that Cross-Appellant had not met her burden by clear and convincing proof that Illiana AnnetteGuerrero was not a resident of District 5 and giving "appropriate deference to the factfinder's conclusions" this Court "must assume that the [trial court] resolved disputed facts in favor of its finding" and therefore affirm the trial court's ruling on this Issue. *Gonzalez v. Villarreal*, 251 S.W.3d 763, 775-76 (Tex.App.-Corpus Christi 2008, pet. dism'd); *Royalty v. Nicholson*, 411 S.W.2d 565 (Tex.Civ.App.-Houston 1967, writ ref'd, n.r.e.) (Contestant in an election contest has the burden of proving by clear and convincing evidence the negative of every theory on which the vote could have been legal.); *See also, Solis v. Martinez,* 264 S.W.2d 956 (Tex.Civ.App.-San Antonio 1954, pet. ref'd.).

**3. Cross-Appellant failed to meet her burden to show by clear and convincing evidence that Guadalupe Rivera, Jr. was not a legal resident of 716 N. Padre, Weslaco, Texas and District 5 of the Weslaco City Commission.**

Again, Cross-Appellant Lopez was required to prove by clear and convincing evidence that in fact Guadalupe Rivera, Jr. did not have a present

10

intention of residing at 716 N. Padre, Weslaco, Texas, **Mills v. Bartlett,** 377 S.W.3d 636, 637 (Tex. 1964), or that he had no intention of returning to that residence after a brief or prolonged absence. **Royalty v. Nicholson,** 411 S.W.2d 565 (Tex.Civ.App.-Houston 1967, writ ref'd n.r.e.); **Solis v. Martinez**, 264 S.W.2d 956 (Tex.Civ.App.-San Antonio 1954, pet. ref'd).

At no time was Guadalupe Rivera, Jr. called to testify at the time of the trial in this case. **Master Index, Alphabetical Index of Witnesses, RR1, 10-13.** Although, Cross-Appellant makes much to do about his claim that he was not able to serve Mr. Rivera, it is difficult to see how Cross-Appellant could have exercised due diligence to actually accomplish service when he had at least 5 months to serve Mr. Rivera. Mr. Rivera works full-time at the offices of Hidalgo County Commissioner, Precinct One, which are public offices and he should have been easy to serve.

Other than excerpts taken out of context from the deposition of Illiana Guerrero, the only evidence Cross-Appellant offered on Guadalupe Rivera's supposed non-residency was the following:

As discussed before, Illiana Guerrero Rivera testified she lives with her husband, Guadalupe Rivera, Jr. in a rented house and that they are living in the house that they rent "just in the meantime." **Deposition of Illiana Annette Guerrero, RR3 p 247, line 9-11.** She testified that when she registered to vote she mistakenly listed the 316 West Lost Toritos address, rather than her true residence

11

and address, 716 North Padre. ***Id, p 251, line 6-15.*** She testified that "[b]ecause we don't plan to live at 700 East 8th for a very long time, and [Lupe Rivera, Jr. is her] husband, and [she is] going to use the address that he uses. We can't just have different addresses on legal documents." ***Id, line 16-21.*** Illiana Annette Guerrero also testified that her "residence is the of [her] husband" and that residence is "716 North Padre Street, Weslaco." ***Id, p 277, line 13-18.***

Cross-Appellee Guadalupe Rivera testified that his son, Guadalupe Rivera, Jr. "has always considered my home his home." ***Testimony of Lupe Rivera***, ***RR4, p 200, line 13-17.*** He testified that Lupe, Jr. lives at 716 N. Padre "off and on." Id. Although "he rents a home 'pero' my house is where he have always considered his - - his primary residence." ***Id, line 21-24***.

Cross-Appellant offered no rebuttal evidence to the testimony of Illiana Guerrero and Cross-Appellee Rivera,, other than excerpts from the testimony of both witnesses taken out of context. Cross-Appellant failed to provide the necessary clear and convincing evidence necessary to rebut the presumption that Guadalupe, Rivera, Jr.'s vote or ballot was valid. ***Royalty v. Nicholson***, 411 S.W.2d 565 (Tex.Civ.App.-Houston 1967, writ ref'd n.r.e.); ***Solis v. Martinez***, 264 S.W.2d 956 (Tex.Civ.App.-San Antonio 1954, pet. ref'd).

Reviewing all the evidence "in the light most favorable to the finding" of the trial court that Cross-Appellant had not met her burden by clear and convincing proof that Guadalupe Rivera, Jr. was not a resident of District 5 and giving

12

"appropriate deference to the factfinder's conclusions" this Court "must assume that the [trial court] resolved disputed facts in favor of its finding" and therefore affirm the trial court's ruling on this Issue. ***Gonzalez v. Villarreal***, ***supra***; ***Royalty v. Nicholson***, *supra*; ***See also,  Solis v. Martinez, supra***.

**4.  Cross-Appellant offered no evidence that Guadalupe Rivera, Jr.  voted in the election being contested.**

Additionally, Cross-Appellant failed to offer any proof that Guadalupe Rivera, Jr. in fact voted in the election being contested.  Therefore, as a matter of law Cross-Appellant failed to meet her burden that this challenged voter voted in the election being contested and this Court must affirm the trial court's decision to overrule Cross-Appellant's challenge to Guadalupe Rivera, Jr.  ***Miller v. Hill,*** 698 S.W.2d 372, 375 (Tex.App.-Houston [14th Dist.] 1985, writ dism'd w.o.j., 714 S.W.2d 313 (Tex.1986) (per curiam).

**5.  Cross-Appellant has failed to meet her burden to show by clear and convincing evidence that the following voters were not legal residents of 1518 E. 6th St., Weslaco, Texas, and District 5 of the Weslaco City Commission: (a) Delma Cadena, (b) Alexia Dinah Chavez, (c)  Alyssa Domitria Chavez, (d) Delma Ann Chavez, (e)  Diana Pena, and (f) Valerie Jadine Pena.**

Cross-Appellant Lopez did not call any of these challenged voters to testify, in in person or by deposition. ***Master Index, Alphabetical Index of Witnesses, RR1, 10-13.*** The only person called was Delma Cadena and she was subpoenaed and called by Cross-Appellee Rivera.  The following was the evidence at trial which the trial court based its finding that Cross-Appellant had failed to meet her

13

burden by clear and convincing evidence that these challenged voters were not residence of District 5:

(a) **Delma Cadena** - She testified that the only residence that she had ever had was the residence at 1518 E. 6th St. *RR5, p 67, line 12-25.* She testified that she had always considered 1518 E. 6th her permanent residence. *Id, p 81, line 9-12.* She testified that she and her daughters considered 1518 E. 6th St. their residence because that is where their "heart is." "That's their home. That's our home." *Id, p 81, line 18- p 82, line 12.* She testified that she had never owned property and that she had always rented. She testified that she had been registered to vote at the residence at 1518 E. 6th St. *Id, line 18--20.* She testified that she kept clothes there and furniture. She testifies that she sometimes sleeps there and that she cares for her sick elderly parents there at the residence, 1518 E. 6th St. She also testified that her daughters often sleep there on occasions because they too consider it their home. She testified that she had never declared a residence anywhere else - her entire life. *Id, p 67, line 19-25; p 68, line 13-15.* She testified that she had been a candidate against Lupe Rivera in the election for City Commissioner, District 5 in the prior election. *Id, p 77, line 25- p 78, line 12.* She testified that her drivers license listed her address as 1518 E. 6th St. *Id, p 78, line 20-21.*

Mrs Cadena also provided testimony that the house that she currently rents is located in the same Weslaco City Commission District 5 as the residence where she

14

she is registered to vote. ***RR5, p 89, line 1-8; p 90, line 8-15.*** There was no evidence that she "intentionally" gave false information to procure the erroneous registration. The only evidence offered at trial was that she believes that her true permanent residence is at 1518 E. 6th St. . Therefore, under Section 11.005 of the Texas Elections Code, Delma Cadena's ballot for the November 2013 election for Weslaco City Commission, District 5 was valid. **Tex.Elec.Code Section 11.005.** Cross-Appellant has provided no evidence, much less clear and convincing evidence, to overcome the presumption that her ballot should be counted. ***Royalty v. Nicholson***, 411 S.W.2d 565 (Tex.Civ.App.-Houston 1967, writ ref'd n.r.e.); ***Solis v. Martinez***, 264 S.W.2d 956 (Tex.Civ.App.-San Antonio 1954, pet. ref'd).

(b) **Alexia Dinah Chavez**; **(c) Alyssa Domitria Chavez**; and **(d) Delma Ann Chavez** - Since Delma Cadena testified that all of her daughters reside with her, the same testimony provided by Delma Cadena described above supports Cross-Appellee's argument that Cross-Appellant has failed to meet her burden by clear and convincing evidence to overcome the presumption that the votes or ballots of Alexia Dinah Chavez, Alyssa Domitria Chavez and Delma Ann Chavez votes are valid. Additionally, Delma Cadena's testified that the reason that DPS records show that Alexia Dinah Chavez' address was 910 Fasken Boulevard, Laredo, Texas, was because she was a student in Laredo at that time, but that her daughter's permanent residence has always been with her. ***RR5, p 71, line 10- p 72, line 8.*** See ***Attorney General Opinion No. GA-0141,***

15

*February 4, 2004* ("[O]ne student who is living in a dormitory, and is therefore physically present for purposes of voter registration, yet who intends his residence to remain the same as that of his parents, can permissibly register to vote in the county of his parent's residence."). Again, Cross-Appellant has provided no evidence, much less clear and convincing evidence, to overcome the presumption that their ballots should be counted. *Royalty v. Nicholson*, 411 S.W.2d 565 (Tex.Civ.App.-Houston 1967, writ ref'd n.r.e.); *Solis v. Martinez*, 264 S.W.2d 956 (Tex.Civ.App.-San Antonio 1954, pet. ref'd).

(e) **Diana Pena and (f) Valerie Pena** - As discussed above, Eusebio Cadena testified that the 1518 E. 6th St. address is the home and residence of all of his daughters. *Deposition of Eusebio Cadena, RR 3, p 110, line 15- 21; p 111, line 2-6.* Delma Cadena also testified that, although Diana Pena and Valerie Jadine Pena, rent at a location on Christian Court, their residence is the 1518 E. 6th Street address. *Testimony of Delma Cadena, RR5, p 73, line 6-19*. She also testified that her and her sisters, brothers, nieces and nephews take turns taking care of their parents. *Id, p 75, line 9-13.*

The only evidence offered by Cross-Appellant was a DPS record showing an address for Valerie Pena at 1722 Christian Ct., the testimony of a process server who testified that he found Diana Pena at the address located at 1722 Christian Ct. and a suggestion that Diana's elderly and sick father should have known where Valerie went to school. Again, there was no evidence provided by Cross-Appellant

16

that showed that Diana Pena and her daughter, Valerie, had a residence any where other than 1518 E. 6th, at least not any clear and convincing evidence that they had a present intention of having a residence anywhere else.

Therefore, Cross-Appellant failed to provide the necessary clear and convincing evidence necessary to rebut the presumption that these voters votes or ballots were valid. ***Royalty v. Nicholson***, 411 S.W.2d 565 (Tex.Civ.App.-Houston 1967, writ ref'd n.r.e.); ***Solis v. Martinez***, 264 S.W.2d 956 (Tex.Civ.App.-San Antonio 1954, pet. ref'd).

Reviewing all the evidence "in the light most favorable to the finding" of the trial court that Appellee had not met her burden by clear and convincing proof that Delma Cadena, Alexia Dinah Chavez, Alyssa Domitria Chavez, Delma Ann Chavez, Diana Pena, and Valerie Jadine Pena. were not a residents of District 5 and giving "appropriate deference to the factfinder's conclusions" this Court "must assume that the [trial court] resolved disputed facts in favor of its finding" and therefore affirm the trial court's ruling on this Issue. ***Gonzalez v. Villarreal***, *supra*; ***Royalty v. Nicholson***, *supra*; ***See also, Solis v. Martinez, supra***.

**6. Cross-Appellant offered no evidence that Delma Cadena, Alexia Dinah Chavez, Alyssa Domitria Chavez, Delma Ann Chavez, Diana Pena, and Valerie Jadine Pena. voted in the election being contested.**

Additionally, Cross-Appellant failed to offer any proof that Delma Cadena, Alexia Dinah Chavez, Alyssa Domitria Chavez, Delma Ann Chavez, Diana Pena, and Valerie Jadine Pena. in fact voted in the election being contested. Therefore, as

a matter of law Cross-Appellant failed to meet her burden that these challenged voter voted in the election being contested and this Court must affirm the trial court's decision to overrule Appellee's challenge to Guadalupe Rivera, Jr. *Miller v. Hill,* 698 S.W.2d 372, 375 (Tex.App.-Houston [14th Dist.] 1985, writ dism'd w.o.j., 714 S.W.2d 313 (Tex.1986) (per curiam).

**7. Cross-Appellant has failed to meet her burden to prove by clear and convincing evidence that the following voters were not legal residents of 316 West Torritos, Weslaco, Texas and District 5 of the Weslaco City Commission: (a) Raul Rivera, Sr. (b) Illiana Yvonne Rivera, and (c) Raul Rivera, Jr.**

Hortencia Cuellar, the sister of Cross-Appellee Guadalupe Rivera, was the only witness called by Cross-Appellant Lopez to testify as to the residence or non-residence on voters who are being challenged. Cross-Appellant Lopez, whose burden it was to show that 316 West Torritos was not their residence as defined by Texas law, did not call, nor subpoena, any of these voters to testify either by deposition or at trial. *Master Index, Alphabetical Index of Witnesses, RR1, 10-13.* The following is a synopsis of Hortencia Cuellar testimony:

(1) She testified that her grandchildren, Cassandra Alaniz, Corina Alaniz and Jesse Alaniz "always come and visit with [her] . . over the weekends, or on the holidays or on vacations they go and stay with [her]." *Deposition of Hortencia Cuellar, RR3, p 93, line 2-* These are her daughter, Felipa Alaniz' children. She also testified that her daughter, Felipa, visits her every day. *Deposition of Hortencia Cuellar, RR3, p 93, line 2-22.* Felipa Alaniz also occasionally sleeps at

18

her house - sometimes two or three days. - sometimes with her children. She testified that Felipa is very close to her. *Id, p 94, line 14-20.* She also testified that Felipa does not own a home, she rents. *Id, p 94, line 5-7*.

    (2) She testified that Irma Rivera, is Raul Rivera's wife and the mother of Illiana Yvonne Rivera. *Id, p 98, line 9-12.* That they live in rented house and that they never stay very long in one single house. *Id, line 13-15.* Raul and his family have rented houses "throughout his entire life." *Id, p 99, line 5-9.* At one point they stayed with her, because "they didn't have the wherewithal to rent." They stayed with here for about two years. *Id, p 99, line 10-14*.

    (3) She testified that the house located at 316 West Torritos, Weslaco, Texas "was the house where [her] entire family was raised." *Id, p 104, line 21-23.* Her "entire family has lived there since [she was] born." *Id, p 104, line 25-p 105, line 1.* That same house "has been the residence of [her] family" for "85 or 90 years." *Id, p 105, line 9-11.* All of her brothers and sisters were born in the house, including her brother Raul Rivera. *Id, p 105, line 16-22.* Also, most of her grandchildren and nieces whose votes are being challenged by Cross-Appellant were born in the house 316 West Torritos. *Id, p 105, line 25- p 106, line6.*

    (4) She testified that the reason that Felipa Cuellar and Cassandra Alaniz are registered to vote at 316 West Torritos, Weslaco, Texas because it is their residence. *Id, p 106, line 7-13.* Although they may rent in other places, "they've always considered that to be their home and their residence." *Id, line*

*14-18.* The same applies to Raul Rivera, Irma Rivera and Illiana Yvonne Rivera. *Id, line 19-23.* "Because Raul and Irma have never had a home anywhere else, [she] and them have always considered the place where [she] resides as their home." *Id, p 106, line 24- p 107, line 2.* "[E]ven though they have to rent in other places, they consider the place where [she] reside[s] 316 West Torritos as their residence." *Id, line 3-8.* at 36.  In fact, she testified "that they even receive some of their mail there." *Id, line 9-11.* Sometimes all of the family members "get mail at [her] house at one time or another." *Id, line 12, 14.* Cassandra, Felipa, and Illiana sometimes get mail at her house on 316 West Torritos.  *Id, line 15-20.*

(5)   "[N]one of these individuals, Cassandra - - neither Cassandra, neither Felipa, neither Illiana Rivera, neither Irma, neither Raul, none of those individuals own a home anywhere else." "[N]ot a single one of them. The are renters, they rent." 316 West Torritos "where [she] live[s] in is a family house, it's the family house for the Rivera family." *Id, p 107, line 21-p 108, line 5.*

Hortencia Cuellar testimony unequivocally establishes that the house on 316 West Torritos, Weslaco, Texas was the residence of a)  Raul Rivera, b)  Illiana Yvonne Rivera, c)  Raul Rivera, Jr, as well as the residence of the other challenged voters of 316 West Torritos.   Once the prima facie evidence of their residence was established by Hortencia Cuellar, it was Cross-Appellant's burden to prove by clear and convincing evidence that in fact these persons *did not* have a present intention of residing at 316 West Torritos, Weslaco, Texas, *Mills v. Bartlett*, 377 S.W.3d 636,

20

637 (Tex. 1964), or that they had **no intention** of returning to that residence after a brief or prolonged absence. **Royalty v. Nicholson**, 411 S.W.2d 565 (Tex.Civ.App.-Houston 1967, writ ref'd n.r.e.); **Solis v. Martinez**, 264 S.W.2d 956 (Tex.Civ.App.-San Antonio 1954, pet. ref'd). Without their sworn testimony, Cross-Appellant would have to offer evidence which proved by clear and convincing evidence, *as a matter of law*, that these voters did not have a present intention of residing at 316 West Torritos or had no intention of returning to that residence after a brief or prolonged absense. This she certainly did not do

As discussed before, not one of these individuals was called to testify at the time of the trial in this case. Other than excerpts taken out of context from the deposition of Hortencia Cuellar, the only evidence offered by Cross-Appellant on each of the challenged voters listed above was the following:

(a) Raul Rivera - - Except for excerpts from Hortencia Cuellar's deposition, Cross-Appellant offered no evidence, clear and convincing or otherwise, to rebut the presumption that Raul Rivera was a resident of 316 West Torritos and that his vote was valid. There is no evidence that Raul Rivera's had a residence other than the residence at 316 West Torritos.

**(b)** Illiana Yvonne Rivera - The only evidence offered by Cross-Appellant to meet the heavy burden that she was required to meet to throw out Illiana Yvonne Rivera's vote was Texas Department of Public Safety "Certified Abstract

21

Record" of a drivers license showing an address "105 1/2 Missouri, Weslaco, TX." ***Texas Department of Public Safety "Certified Abstract Record", RR 7, Part 2, pp 15-16.*** The record shows that the drivers license with this address was first issued on May 1, 2008, five and a half years prior to the date of the election. Furthermore, and perhaps most importantly, there was no evidence offered that this Illiana Yvonne Rivera, is the Illiana Yvonne Rivera who is registered to vote at 316 West Torritos, Weslaco, Texas and who actually voted in the November 2013, election for City Commissioner, District 5 election. Under Texas law, a five and half year old drivers license application showing an address in a location other the residence listed in the voter registration application of a voter is not clear and convincing proof to overcome the presumption that the Illiana Yvonne Rivera in question in fact resided at the residence that she declared as her residence when she registered to vote and which her grandmother testified was her residence. See, ***In Re Peacock***, 2014 WL 316708 (Tex.App.-Tyler 2014)(A current filed homestead exemption in another county is not enough to destroy residency in the county where a voter or candidate is declaring her residency.).

(c) Raul Rivera, Jr. - Except for excerpts from Hortencia Cuellar's deposition, Cross-Appellant offered no evidence, clear and convincing or otherwise, to rebut the presumption that Raul Rivera, Jr. was a resident of 316 West Torritos and that his vote was valid.

22

Cross-Appellant incorrectly states on page 8 of his brief that "DPS records show an address for Raul Rivera at 105 1/2 South Missouri, Weslaco, Texas." ***Texas Department of Public Safety "Certified Abstract Record", RR 7, Part 2, pp 9-11.*** In fact, Contestant's Exhibit 41, which Cross-Appellant cites to, is a DPS record of a drivers license of Raul Rivera, which lists his address as 316 W. Torritos St., Weslaco, Texas. Finally, Cross-Appellant relies on the fact that the trial court found Irma Rivera, wife of Raul Rivera, to not reside in District 5 as evidence that Raul Rivera must also not reside in District 5. Cross-Appellee would refer this Court to Appellant's Brief wherein Appellant shows that the trial court erred in finding that Irma Rivera was not a resident of District 5.

As to Raul Rivera, Jr. the although trial court mentioned during the court's pronouncement of his findings and rulings that the application to register was filled out by the same person who filed out his mother's registration application, the court rightfully found that "there's no evidence of his age, or if he lives with his parents" and found that it could not find by clear and convincing evidence that Raul Rivera, Jr did not reside at 316 W. Torritos, Weslaco, Texas. ***Findings of Fact and Conclusions of Law, Supp CR 24-32.***

With respect to all three of these voters, Cross-Appellant has failed to offer clear and convincing evidence to rebut the presumption that their votes were valid and to establish the negative that in fact they did not have a present intention of having 316 West Torritos as their residence or that they did not intend to return to

their residence at 316 W. Torritos after a temporary or prolonged absence. ***Royalty v. Nicholson,*** 411 S.W.2d 565 (Tex.Civ.App.-Houston 1967); ***Solis v. Martinez,*** 264 S.W.2d 956 (Tex.Civ.App.-San Antonio 1954).

Reviewing all the evidence "in the light most favorable to the finding" of the trial court that Cross-Appellant had not met her burden by clear and convincing proof that Raul Rivera, Illiana Yvonne Rivera, and Raul Rivera, Jr. were not a residents of District 5 and giving "appropriate deference to the factfinder's conclusions" this Court "must assume that the [trial court] resolved disputed facts in favor of its finding" and therefore affirm the trial court's ruling on this Issue. ***Gonzalez v. Villarreal***, ***supra***; ***Royalty v. Nicholson***, ***supra***; ***See also, Solis v. Martinez, supra***.

**8. Cross-Appellant offered no evidence that Raul Rivera, Illiana Yvonne Rivera, and Raul Rivera, Jr. voted in the election being contested.**

Additionally, Cross-Appellant failed to offer any proof Raul Rivera, Illiana Yvonne Rivera, and Raul Rivera, Jr. in fact voted in the election being contested. Therefore, as a matter of law Cross-Appellant failed to meet her burden that these challenged voter voted in the election being contested and this Court must affirm the trial court's decision to overrule Cross-Appelant's challenge to Guadalupe Rivera, Jr. ***Miller v. Hill,*** 698 S.W.2d 372, 375 (Tex.App.-Houston [14th Dist.] 1985, writ dism'd w.o.j., 714 S.W.2d 313 (Tex.1986) (per curiam). **voted in the election being contested.**

**B. CROSS-APPELLEE'S RESPONSE TO CROSS-APPELLANT'S ISSUE NO. 1b:**

*The trial court did not commit error in failing to find by clear and convincing evidence that Martinez voted for Cross-Appellee Rivera in the District 5 race in that the trial court was within its discretion to chose to not believe that testimony of Mr. Martinez.*

Cross-Appellant asks this Court to reverse the trial court's decision to not find by clear and convincing evidence that Esteban Martinez voted for Guadalupe Rivera, Jr. After the trial court made its findings in open court and after the trial court issued its Findings of Fact and Conclusions of Law, Cross-Appellant filed "CONTESTANT'S REQUESTS FOR ADDITIONAL AND AMENED FINDINGS OF FACT AND CONCLUSIONS OF LAW" requesting that the trial court make an additional finding of fact that Esteban Martinez voted for Guadalupe Rivera. *Contestant's Request for Additional and Amended Findings of Fact and Conclusions of Law, Supp CR 33-38; p 33 paragraphs 1-4.* The trial court declined: "Esteban Martinez -The court has found the vote to be illegal but was unable to determine by clear and convincing evidence that it was cast for Rivera. This vote remains in the undetermined category." *Trial Judge Email, Supp CR 39.*

Cross-Appellant argues that the testimony of Esteban Martinez as to who he voted for was "clear, direct, positive, and contradicted by any other witnesses or attendant circumstances" and therefore should be "taken as true as a matter of law." BRIEF OF CROSS-APPELLANT LETICIA LOPEZ, pg. 49. Esteban Martinez

testified by deposition and at trial, having been called on both occasions by Cross-Appellant. He provided the incredible testimony that the day after he cast his mail-in ballot, a six pack of beer appeared on his door step - although he does not know how it got there. **RR2, p 203, line 24- p 204, line 7.** Furthermore, the Cross-Appellant argued from the outset that Esteban Martinez was illegally assisted and sought to disqualify him on that basis.

Taking Mr. Martinez' testimony as a whole, including the testimony regarding the strange appearance of a six pack of beer at his door step , plus considering the fact that he had been called to testify on more than one occasion in this case, it was well within the discretion for the trial court to chose to believe some of his testimony but not all. **See: Johnson v. Ventling,** 2013 WL 6730043 (Tex. App. Corpus Christi 2013)**; and Flores v. Fourth Court of Appeals,**777 SW 2d. 38, 41-41, (Texas 1989). Given these facts, it was well within the discretion of the trial court to fail to find by clear and convincing evidence that Esteban Martinez voted for Guadalupe Martinez.

Reviewing all the evidence "in the light most favorable to the finding" of the trial court that it could not find by clear and convincing evidence that Esteban Martinez voted for Guadalupe Rivera, this Court "must assume that the [trial court] resolved disputed facts in favor of its finding" and therefore affirm the trial court's

26

ruling on this Issue. *Gonzalez v. Villarreal*, *supra*; *Royalty v. Nicholson*, *supra*;

*See also, Solis v. Martinez, supra*.

## C. CROSS-APPELLEE'S RESPONSE TO CROSS-APPELLANT'S ISSUE NO. 2:

***The trial court did not commit error in deducting the votes of Tomasa Cavazos, Jose Luis Martinez, Sr., and Jose Luis Martinez, Jr. from Cross-Appellant Lopez's final vote count, because there is clear and convincing evidence to support the finding that they did not reside in District 5 of the Weslaco City Commission and voted for Cross-Appellant Lopez.***

Cross-Appellant, not Cross-Appellee, subpoenaed and called Jose Luis Martinez, Sr. and Jose Luis Martinez, Jr. to testify the time of trial. Cross-Appellant Lopez, offered evidence that both Jose Luis Martinez, Sr. and Jose Martinez, Jr. had voted illegally in the District 5 City Commission election and that their votes should thereby not be counted. *RR2, 21-52; 53-67.* Both Jose Martinez, Sr. and Jose Martinez, Jr. testified that they voted for Cross-Appellant Lopez because Ms. Lopez had provided financial and emotional support to their family after the tragic death of Mr. Martinez' niece, Crystal Cavazos. *RR2, p 36, line 13- p 37, line 18; p 60, line 20- p 61, line 13.* No evidence was offered by Cross-Appellant to rebut this testimony as to who Jose Martinez, Sr. and Jose Martinez, Jr. actually voted for in the District 5 election. Furthermore, Cross-Appellant Lopez offered evidence challenging residence of a Tomasa Martinez Cavazos , who was the mother of Crystal Cavazos. *RR 5, p 34-65.* She likewise testified that

she had voted for Appellee Lopez because of the financial and emotional support provided to her family by Ms. Lopez. **RR5, p 43, line 6-18.** Again, Cross-Appellant Lopez did not rebut Mrs. Cavazos testimony regarding who she had voted for. **RR5 pp 34-35.**

The trial court found that Jose Luis Martinez, Sr., Jose Luis Martinez, Jr. and Tomasa Martinez Cavazos did not reside in District 5, found that they had voted for Cross-Appellant Lopez and deducted from Cross-Appellant Lopez' total the three votes that they cast. **Findings of Fact and Conclusions of Law, Supp CR 24-32.**

The evidence as to who these three voters voted for was not refuted. They gave more than credible reasons for having cast their vote for Cross-Appellant. Cross-Appellant challenged these voters and Cross-Appellant does not dispute that she was able to prove by clear and convincing evidence that these voters were not residents of District 5. Upon their disqualification, the trial court had the discretion to determine who they voted for in deciding how their improper votes effected the final outcome of the election being challenged. In considering all of the evidence, (which in this instance there was only evidence offered by these three individuals as to their vote for Appellee), this court is free to conclude that the evidence support's the trial court's finding that these three individuals voted for Cross-

Appellant and that their votes should be deducted from Cross-Appellant. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983).

All that Cross-Appellant can argue is that their testimony is incredible and can't be believed. In fact they can be believed and the trial court could, within its discretion, find that they did vote for Cross-Appellant Lopez. Reviewing all the evidence "in the light most favorable to the finding" of the trial court that Jose Luis Martinez, Jr., Jose Luis Martinez, Sr. and Tomas Cavazos had voted for Cross-Appellant Lopez and giving "appropriate deference to the factfinder's conclusions" this Court "must assume that the [trial court] resolved disputed facts in favor of its finding" and therefore affirm the trial court's ruling on this Issue. *Gonzalez v. Villarreal*, *supra*; *Royalty v. Nicholson*, *supra*; *See also, Solis v. Martinez, supra*.

## D. CROSS-APPELLEE'S REPLY TO CROSS-APPELLANT'S ISSUE NO 4

*The trial court did not commit error in deducting four undervotes, rather than one or two from the total number of illegal but undetermined votes cast in the election because Cross-Appellant failed to prove by clear and convincing evidence that said undetermined voters were not among the undercounted undetermined voters.*

Finally, Cross-Appellant in a confusing analysis of the undercount attempts to convince this Court that the trial court erred by deducting 4 votes from the total undetermined votes based upon the undercount in the election, i.e. based upon the

29

total number of District 4 voters not voting in the District 4 City Commission race. Instead, it argues that the trial court should have subtracted two votes. Appellant relies solely on a "canvas report" which it alleges proves by clear and convincing evidence that the undercount should be four. No one was called to testify as to the accuracy of the "canvas report", how to interpret it and whether it accurately reflected the undercount in each category of voters. ***Master Index, Alphabetical Index of Witnesses, RR1, 10-13.*** Appellant asks this Court to take a leap of faith, by clear and convincing evidence, and throw out an additional 2 votes. This is in addition to the fact that there is no determination as to whose vote is actually being disqualified for purposes of residency, recognizing that even if a voter who was not a resident of District 5 could not vote in the District 5 City Commission election, his vote was entirely legal in the election for mayor and the vote for the proposed Constitutional Amendments. It should not be so easy to disenfranchise a voter - our Constitution does not permit this.

Cross-Appellant sought to convince the trial court to take this "leap of faith" when it filed proposed requests 27-29 in "CONTESTANT'S REQUEST FOR ADDITIONAL AND AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW" on November 6, 2014. ***Contestant's Request for Additional and Amended Findings of Fact and Conclusions of Law, Supp CR 33-38.*** The trial court's response: "The court made no such findings in its decision." ***Trial Judge***

***Email, Supp CR 39.*** Quite clearly, the court found, within its discretion, that the Cross-Appellant had not proved by clear and convincing evidence an applicable undercount less that four votes and thereby denied Cross-Appellant's proposed requests.

The trial court was within its discretion to believe or disbelieve any evidence offered at trial, particularly when the burden upon the party seeking to prove a matter in contention is by "clear and convincing evidence." ***See: Johnson v. Ventling,*** 2013 WL 6730043 (Tex. App. Corpus Christi 2013)***; and Flores v. Fourth Court of Appeals,***777 SW 2d. 38, 41-41, (Texas 1989). Here the trial court, within its discretion, found by clear and convincing evidence that "that four (4) voters did not cast a ballot for City Commissioner District 5, Weslaco, Hidalgo County, Texas." Reviewing all the evidence "in the light most favorable to the finding" of the trial court that "that four (4) voters did not cast a ballot for City Commissioner District 5, Weslaco, Hidalgo County, Texas" and giving "appropriate deference to the factfinder's conclusions" this Court "must assume that the [trial court] resolved disputed facts in favor of its finding" and therefore affirm the trial court's ruling on this Issue. ***Gonzalez v. Villarreal***, ***supra***; ***Royalty v. Nicholson***, ***supra***; ***See also, Solis v. Martinez, supra***.

## CONCLUSION

As the above arguments and evidence establish, the trial did not err in 1) failing to find that Cross-Appellant failed to prove by clear and convincing evidence that the voters challenged on the basis of residency were not residents, as defined under the Texas Elections Code, of the residence where they were registered, 2) failing to find by clear and convincing evidence that Esteban Martinez voted for Guadalupe Rivera, 3) finding that Jose Luis Martinez, Sr., Jose Martinez, Jr. and Tomasa Cavazos voted for Cross-Appellant Lopez, and 4) finding by clear and convincing evidence that "that four (4) voters did not cast a ballot for City Commissioner District 5, Weslaco, Hidalgo County, Texas". As to these rulings this Court should affirm the trial court.

Respectfully submitted,
**Law Offices of Gilberto Hinojosa &
Associate, PC**

/s/_____
Gilberto Hinojosa
State Bar No. 09701100
622 E. St. Charles
Brownsville, TX 78520
(956)   544-4218 (Telephone)
(956)   544-1335 (Facsimile)
**ATTORNEY FOR APPELLANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to all counsel of record on this **5th** day of January, 2015 in accordance with the Texas Rules of Civil Procedure.

Jerad Wayne Najvar
NAJVAR LAW FIRM
4151 Southwest Freeway, Suite 625
Houston, TX 77027
Tel. (281) 404-4696
Cell: (281) 684-1227
email: jerad@najvarlaw.com

/s/_____
Gilberto Hinojosa

## CERTIFICATE OF COMPLIANCE

I certify that based on the word count provided by the computer program used to prepare this response brief, this document contains 7,784 words, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(l).

**BY:** /s/_____
Gilberto Hinojosa